IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| DAN BOGER on behalf of himself and others similarly situated, | : | |
| | : | |
| Plaintiff, | : | Case No. 19-cv-1681 |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PRIME LEADS NETWORK, LLC, MOHAMMED AKRAM .THE DEVINE GROUP, JOSEPH GIGUERE INSURANCE AGENCY, INC., and ALLSTATE INSURANCE COMPANY | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |
| _____ | / | |

**CLASS ACTION COMPLAINT**

**Preliminary Statement**

1. Plaintiff Dan Boger ("Mr. Boger") ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. In violation of the TCPA and the Maryland Telephone Consumer Protection Act, Md. Code Ann. Com. Law §§ 14-3201, *et seq*., ("Maryland TCPA"), Allstate Insurance Company ("Allstate Insurance Company"), through their exclusive agents Joseph Giguere Insurance Agency, Inc. ("Giguere Agency") and The Devine Group ("Devine Group"), hired the co-defendant, Prime Leads Network ("Prime Leads") and Mohammed Akram ("Akram"), who made multiple telemarketing calls to a cellular telephone number of Mr. Boger for the purposes

of advertising Allstate Insurance Company goods and services using an automated dialing system, which is prohibited by the TCPA. Prime Leads and Akram made telemarketing calls to Mr. Boger even after he contacted Allstate and Prime Leads and requested that his cellular telephone number placed on their Internal Do Not Call List.

2. ~~In violation of the TCPA and the Maryland Telephone Consumer Protection Act, Md. Code Ann. Com. Law §§ 14-3201, *et seq*., ("Maryland TCPA"), Allstate Insurance Company ("Allstate Insurance Company"), through their exclusive agents Joseph Giguere Insurance Agency, Inc. ("Giguere Agency") and The Devine Group ("Devine Group"), hired the co-defendant, Prime Leads Network ("Prime Leads"), who made multiple telemarketing calls to a cellular telephone number of Mr. Boger for the purposes of advertising Allstate Insurance Company goods and services using an automated dialing system, which is prohibited by the TCPA. Prime Leads made telemarketing calls to Mr. Boger even after he contacted Allstate and Prime Leads and requested that his cellular telephone number placed on their Internal Do Not Call List.~~

3. The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendants.

4. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

~~4.~~

**Parties**

5. Plaintiff Dan Boger is a resident of the state of Maryland and this District.

6. Defendant Allstate Insurance Company is a corporate entity registered in Illinois with a registered agent of CT Corporation System at 208 S. Lasalle St., Suite 814 in Chicago, IL 60604. It regularly conducts business in this District, as it attempted to do with the Plaintiff.

7. Defendant Joseph Giguere Insurance Agency, Inc. is a corporate entity registered to do business in Virginia. It has a registered agent of Joseph Giguere located at 13930 Rexburg Ct., in Woodbridge, VA 22193. It regularly conducts business in this District, as it attempted to do with the Plaintiff.

8. Defendant The Devine Group is an unregistered business enterprise based at 2205 Silverside Rd., Suite 1 in Wilmington, DE. Daniel Devine, who is a registered Allstate agent, operates the Devine Group. It regularly conducts business in this District, as it attempted to do with the Plaintiff.

9. Defendant Prime Leads Network, LLC is a corporate entity registered in Maryland with a registered agent of Mohammed Akram at 4711 Liberty Heights Ave. in Gwynn Oak, MD 21207. It regularly conducts telemarketing in this District, as it did with the Plaintiff.

10. Defendant Akram is a resident of Maryland and resides at 1804 Newcastle Road in Windsor Mill, Maryland, 21244. Akram directs the business activities of Prime Leads, including personally participating in the illegal calls made to the Plaintiff.

9.

**Jurisdiction & Venue**

10.11. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

11.12.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District as the telemarketing calls that gave rise to the Plaintiff's claims were made into this District.

**The Telephone Consumer Protection Act**

12.13.  In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

13.14.  The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).  A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

14.15.  The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry.  47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

The TCPA Prohibits Automated Telemarketing Calls

15.16.  The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The

TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

16.17. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

17.18. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

18.19. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

20. Mr. Akram is the owner and operator of Prime Leads and is liable for its conduct.

21. Under the TCPA, an individual such as Mr. Akram, may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*.

*See* 47. U.S.C. § 217 (emphasis added).

22. When considering individual officer liability under the TCPA, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g.*, *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

Mr. Akram personally participated in the actions complained of by utilizing the dialing equipment used to send the telemarketing calls, and by personally authorizing the conduct and by the fact that he is charged with its compliance with state and federal telemarketing laws.

**Factual Allegations**

23. Allstate Insurance Company provides various insurance services to its customers.

24. To generate business through sales, Allstate Insurance Company relies on telemarketing.

6

21 25.  Allstate Insurance Company also relies on a network of nationwide agents that sell its insurance services.

22 26.  One of Allstate Insurance Company's strategies for telemarketing involves the use of an automatic telephone dialing system ("ATDS") to solicit business by third parties.

23 27.  Allstate Insurance Company engages this use of this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone.

24 28.  Through this method, Allstate Insurance Company shifts the burden of wasted time to the consumers it calls with unsolicited messages.

Calls to Mr. Boger

25 29.  Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

26 30.  Mr. Boger's telephone number, (703) 328-XXXX, is assigned to a cellular telephone service.

27 31.  Mr. Boger placed his cellular telephone number, (703) 328-XXXX, on the National Do Not Call Registry more than five years ago.

28 32.  Despite taking the affirmative step of registering his telephone number on the National Do Not Call Registry, Prime Leads placed a telemarketing call to him on June 19, 2018.

29 33.  When the call was answered, there was a lengthy pause and a click before anyone came on the line, which indicated to the Plaintiff that the call was made using an ATDS.

30 34.  When the Plaintiff finally connected with a live individual on each call, he was solicited for an insurance quote.

31 35.  In fact, the individual identified themselves as "Zack from Allstate".

7

32.36.  To confirm the identity of Allstate and the services being offered, Mr. Boger listened to the telemarketing pitch and was eventually connected to "Dimitri" an employee of the Joseph Giguere Insurance Agency, Inc., an exclusive Allstate agent.

33.37.  After confirming the identity of the individuals involved in the telemarketing, Mr. Boger contacted Allstate and Prime Leads and was informed that he would be placed on the Allstate Internal Do Not Call List.

34.38.  In fact, Mr. Boger received an e-mail from Ms. Gayle Burton at Allstate on June 21, 2018 that confirmed that Mr. Boger was placed on the Allstate Do Not Call list.

35.39.  Unfortunately, the calls did not stop.

36.40.  On October 23, 2018, the Plaintiff received another call from "Zack from Allstate".

37.41.  When the call was answered, there was a lengthy pause and a click before anyone came on the line, which indicated to the Plaintiff that the call was made using an ATDS.

38.42.  To confirm the identity of Allstate and the services being offered, Mr. Boger listened to the telemarketing pitch and was eventually connected to "Peter Heller" an employee of the Giguere Agency Joseph Giguere Insurance Agency, Inc., an exclusive Allstate agent.

39.43.  Mr. Boger was solicited for Allstate insurance services and again advised Allstate of the contact.

40.44.  However, Mr. Boger has still received telemarketing calls from Prime Leads for Allstate.

41.45.  On November 1, 2018, the Plaintiff received a call from "Henry from Allstate". Henry believed Mr. Boger lived at an address that is not, and has never been, associated with the Plaintiff. Mr. Boger was transferred to "James from Allstate Insurance".

~~42.~~ 46.  To confirm the identity of Allstate and the services being offered, Mr. Boger listened to the telemarketing pitch and was eventually connected to "Julia Kines" an employee of the Giguere Agency, ~~Joseph Giguere Insurance Agency, Inc.,~~ an exclusive Allstate agent.

~~43.~~ 47.  Mr. Boger was solicited for Allstate insurance services and again advised Allstate of the contact.

~~44.~~ 48.  The telemarketing calls made by the Giguere Agency to Boger were initiated by Prime Leads and Akram acting on behalf of the Giguere Agency and Allstate ~~Yet the calls did not stop~~.

~~45.~~ 49.  On February 8, 2019, the Plaintiff received another call from "Zack from Allstate".

~~46.~~ 50.  When the call was answered, there was a lengthy pause and a click before anyone came on the line, which indicated to the Plaintiff that the call was made using an ATDS.

~~47.~~ 51.  To confirm the identity of Allstate and the services being offered, Mr. Boger listened to the telemarketing pitch and was eventually connected to "Ann Devine-Hague" an employee of the Daniel Devine Allstate office, an exclusive Allstate agent.

~~48.~~ 52.  Mr. Boger was solicited for Allstate insurance services and again advised Allstate of the contact.

~~49.~~ 53.  This telemarketing call was also made by Prime Leads and Akram acting on behalf of the Devine Group and Allstate.

~~50.~~ 54.  The calls were not necessitated by an emergency.

~~51.~~ 55.  Plaintiff's privacy has been violated by the above-described telemarketing robocalls from, or on behalf of, Defendants. The calls were an annoying, harassing nuisance.

52.56.  Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls. The calls occupied his cellular telephone lines, rendering them unavailable for legitimate communication.

**Allstate Insurance Company's Liability**

53.57. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

54.58.  On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

55.59. In that ruling, the FCC instructed that sellers such as Allstate Insurance Company may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

56.60.  The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

57.61.  The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

FCC Rcd at 6592 (¶ 46).

58.62.  Allstate is liable to Mr. Boger for the calls made to him by Prime Leads after Mr. Boger explicitly informed Allstate that Prime Leads was making telemarketing calls for Allstate agents in violation of the TCPA, yet Prime Leads continued to make calls for Allstate agents, including to Mr. Boger, for a number of months after he informed Allstate.

59.63.  By having their exclusive agents engage Prime Leads to make calls on behalf of its agents to generate new business, Allstate Insurance Company "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

11

60 64.   Moreover, Allstate Insurance Company and their exclusive agents maintained interim control over Prime Leads' actions.

61 65.   For example, Allstate Insurance Company had absolute control over whether, and under what circumstances, it would accept a customer.

62 66.   Furthermore, Allstate Insurance Company had day-to-day control over Prime Leads's actions, including the ability to prohibit it from using an ATDS to contact potential customers of Allstate Insurance Company. Allstate Insurance Company failed to make such an instruction to Prime Leads, despite the fact that Mr. Boger explicitly informed them of Prime Leads conduct, and as a result, is liable for Prime Leads' actions.

63 67.   All of the Allstate insurance agents involved in the telemarketing at issue use "@allstate.com" e-mail addresses and are listed on Allstate's website.

64 68.   Prime Leads transferred customer information directly to Allstate Insurance Company.  Thus, the company that Allstate Insurance Company hired has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling.  As such, the company that Allstate Insurance Company hired is an apparent agent of Allstate Insurance Company.

65 69.   Allstate Insurance Company had also previously been sued for the actions of third party telemarketers it hired, and as such was on notice that third parties, such as Prime Leads, were violating the TCPA on Allstate Insurance Company's behalf.

66 70.   Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).  Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of

demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

**Class Action Allegations**

~~67.~~71. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

~~68.~~72. The classes of persons Plaintiff proposes to represent are tentatively defined as:

CLASS 1

All persons within the United States to whom: (a) Prime Leads and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) promoting Allstate products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

MARYLAND TCPA SUBCLASS

All Maryland Residents to whom: (a) Prime Leads and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) promoting Allstate products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

Excluded from the class are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

~~69.~~73. The class as defined above is identifiable through phone records and phone number databases.

~~70.~~74.  The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

~~71.~~75.  Plaintiff is a member of the proposed class.

~~72.~~76.  There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

      a.    Whether Defendants violated the TCPA by using automated telemarketing to call cellular telephones;

      b.    Whether Defendants placed calls using an automatic telephone dialing system;

      c.    Whether Allstate Insurance Company is vicariously liable for the conduct of Prime Leads;

      d.    Whether Defendants placed calls without obtaining the recipients' prior consent for the call;

      e.    Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

~~73.~~77.  Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by the defendants and are based on the same legal and remedial theories.

~~74.~~78.  Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

75 79.  Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

76 80.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

77 81.  The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

78 82.  Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

<u>**Causes of Action**</u>

**Count One:
Violation of the TCPA's Automated Calling provisions**

79 83.  Plaintiff Boger incorporates the allegations from all previous paragraphs as if fully set forth herein.

80 84.  The foregoing acts and omissions of the Defendants constitute violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

81 85.  As a result of the Defendants violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each

and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B). The Court may award up to $1,500 if the violation was found to be "knowing or willful". *Id.*

82.86.  Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

**Count Two:
Violation of the Maryland Telephone Consumer Protection Act**

83.87.  Plaintiff Boger incorporates the allegations from all previous paragraphs as if fully set forth herein.

84.88.  The foregoing acts and omissions of the Defendants constitute violations of the Maryland Telephone Consumer Protection Act, Md. Code Ann. Com. Law §§ 14-3201, *et seq.*, which prohibits a person from violating the TCPA. Here, as alleged above, the Defendants violated to the TCPA by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

85.89.  As a result of the Defendants violations of the Maryland TCPA, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to Md. Code Ann. Com. Law § 14-3202(b)(2)(i) as well as their attorneys fees pursuant to Md. Code Ann. Com. Law § 14-3202(b)(1).

**Relief Sought**

For himself and all class members, Plaintiff requests the following relief:

A.  Certification of the proposed Class;

B.  Appointment of Plaintiff as representative of the Class;

C.  Appointment of the undersigned counsel as counsel for the Class;

D.  A declaration that Defendants' actions complained of herein violate the TCPA;

E.  An order enjoining Defendants from making automated or pre-recorded calls;

F.  An award to Plaintiff and the Class of damages, as allowed by law;

G.  Attorney's Fees as allowed by the Maryland Telephone Consumer Protection Act;

H.  Leave to amend this Complaint to conform to the evidence presented at trial; and

I.  Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
By his attorneys

/s/
Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
(508) 319-3077 *facsimile*
mmccue@massattorneys.net

Stephen H. Ring, Esq. (Atty No. 00405)
STEPHEN H. RING, PC
9901 Belward Campus Drive, Suite 175
Rockville, Maryland 20850
(301) 563-9249

17

shr@ringlaw.us

Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510

Edward A. Broderick
Broderick Law, P.C.
99 High St., Suite 304
Boston, MA  02110
(617) 738-7080
ted@broderick-law.com