### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND
**(Greenbelt Division)**

DAN BOGER on behalf of himself and
others similarly situated,

      Plaintiff,

v.

PRIME LEADS NETWORK, LLC, THE
DEVINE GROUP, JOSEPH GIGUERE
INSURANCE AGENCY, INC., and
ALLSTATE INSURANCE COMPANY,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 19-cv-1681-GJH

### ANSWER OF DEFENDANT ALLSTATE INSURANCE COMPANY

Defendant Allstate Insurance Company ("Allstate"), by and through counsel, hereby responds to Plaintiff Dan Boger's ("Plaintiff") amended class action complaint as follows:

#### Preliminary Statement

1.    Plaintiff Dan Boger ("Mr. Boger") ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. See *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

**RESPONSE:** Paragraph 1 contains a characterization of the case and does not set forth an allegation to which a response is required.  To the extent a response is required, denied.

2.    In violation of the TCPA and the Maryland Telephone Consumer Protection Act, Md. Code Ann. Com. Law §§ 14-3201, *et seq.*, ("Maryland TCPA"), Allstate Insurance Company ("Allstate Insurance Company"), through their exclusive agents Joseph Giguere Insurance

Agency, Inc. ("Giguere Agency") and The Devine Group ("Devine Group"), hired the co-defendant, Prime Leads Network, who made multiple telemarketing calls to a cellular telephone number of Mr. Boger for the purposes of advertising Allstate Insurance Company goods and services using an automated dialing system, which is prohibited by the TCPA. Prime Leads made telemarketing calls to Mr. Boger even after he contacted Allstate and Prime Leads and requested that his cellular telephone number be placed on their Internal Do Not Call List.

**RESPONSE:** Allstate denies the allegations in Paragraph 2.

3.      Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers en masse, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendants.

**RESPONSE:** Allstate denies the allegations in Paragraph 3.

4.      A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**RESPONSE:** The allegations in Paragraph 4 either express Plaintiff's opinion or are legal conclusions to which no response is required.  To the extent a response is required, Allstate denies that Plaintiff may bring this case as a class action and denies the allegations in Paragraph

**Parties**

5.      Plaintiff Dan Boger is a resident of the state of Maryland.

**RESPONSE:** Allstate is without sufficient information to admit or deny the allegation in Paragraph 5.  To the extent a response is required, denied.

6.      Defendant Allstate Insurance Company is a corporate entity formed in Illinois, maintaining its principal offices at 2775 Sanders Rd., Northbrook, IL 60062 and listing its registered agent as CT Corporation System at 208 S. Lasalle St., Suite 814, Chicago, IL 60604. It regularly conducts business in this District, as it attempted to do with the Plaintiff. Allstate may be served in Maryland via the Maryland Insurance Administration, 200 St. Paul Place, Suite 2700, Baltimore, MD 21202. Insurance Article, Annotated Code of Maryland, Sections §4-107.

**RESPONSE:** Allstate denies that it is a corporate entity formed in Illinois. Allstate admits that its principal office is located at 2775 Sanders Rd., Northbrook, IL 60062. Allstate admits that its registered agent in Illinois is CT Corporation System at 208 S. LaSalle Street, Suite 814, Chicago, Illinois 60604. Allstate admits that it does business in Maryland. Allstate admits that it may be served in Maryland via the Maryland Insurance Administration. Allstate denies the remaining allegations in Paragraph 6.

7.      Defendant Joseph Giguere Insurance Agency, Inc. is a corporate entity registered to do business in Virginia. It has a registered agent of Joseph P. Negron located at 15140 Athey LP in Woodbridge, VA 22193. It regularly conducts business in this District, as it attempted to do with the Plaintiff.

**RESPONSE:** Allstate is without sufficient information to admit or deny the allegations in Paragraph 7. To the extent a response is required, denied.

8.      Defendant The Devine Group is an unregistered business enterprise based at 2205 Silverside Rd., Suite 4 in Wilmington, DE. Daniel Devine, who is a registered Allstate agent, operates the Devine Group. It regularly conducts business in this District, as it attempted to do with the Plaintiff.

**RESPONSE:** Allstate admits that Daniel Devine is a registered Allstate agent. Allstate is without sufficient information to admit or deny the remaining allegations in Paragraph 8. To the extent that a response to those allegations is required, denied.

9. Defendant Prime Leads Network, LLC is a corporate entity registered in Maryland with a registered agent of Mohammed Akram at 4711 Liberty Heights Ave. in Gwynn Oak, MD 21207. It regularly conducts telemarketing in this District, as it did with the Plaintiff.

**RESPONSE:** Allstate is without sufficient information to admit or deny the allegations in Paragraph 9. To the extent a response is required, denied.

10. Defendant Akram is a resident of Maryland and resides at 1804 Newcastle Road in Windsor Mill, Maryland, 21244. Akram directs the business activities of Prime Leads, including personally participating in the illegal calls made to the Plaintiff.

**RESPONSE:** Allstate is without sufficient information to admit or deny the allegations in Paragraph 10. To the extent a response is required, denied.

### Jurisdiction & Venue

11. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v.* Arrow *Financial Services, LLC*, 132 S. Ct. 740 (2012).

**RESPONSE:** Admitted.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District as the telemarketing calls that gave rise to the Plaintiff's claims were made in, or sent into, this District.

**RESPONSE:** Allstate admits that the Court has personal jurisdiction over it in this action. Allstate denies the remaining allegations in Paragraph 12.

**The Telephone Consumer Protection Act**

13.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

**RESPONSE:** The allegations in Paragraph 13 express Plaintiff's opinion or contain legal conclusions and a partial quotation of a statute to which no response is required. To the extent a response is required, denied.

The National Do Not Call Registry

14.      The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

**RESPONSE:** The allegations in Paragraph 14 contain legal conclusions and a partial quotation of a federal regulation to which no response is required. To the extent a response is required, denied.

15.      The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

**RESPONSE:** The allegations in Paragraph 15 contain legal conclusions to which no response is required. To the extent a response is required, denied.

The TCPA Prohibits Automated Telemarketing Calls

16.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). See 47 U.S.C. § 227(b)(3).

**RESPONSE:** The allegations in Paragraph 16 contain legal conclusions and a partial quotation of a statute to which no response is required.  To the extent a response is required, denied.

17.    According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

**RESPONSE:** The allegations in Paragraph 17 contain legal conclusions to which no response is required.  To the extent a response is required, denied.

18.    The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

**RESPONSE:** The allegations in Paragraph 18 contain legal conclusions and a partial quotation from a Federal Communications Commission ("FCC") opinion to which no response is required.  To the extent a response is required, denied.

19.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**RESPONSE:** The allegations in Paragraph 19 contain legal conclusions and a partial quotation from a FCC opinion to which no response is required.  To the extent a response is required, denied.

20.     Mr. Akram is the owner and operator of Prime Leads and is liable for its conduct.

**RESPONSE:** Allstate is without sufficient information to admit or deny the allegations in Paragraph 20.  To the extent a response is required, denied.

21.     Under the TCPA, an individual such as Mr. Akram, may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia:*

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*.

*See* 47 U.S.C. § 217 (emphasis added).

**RESPONSE:** The allegations in Paragraph 21 contain legal conclusions and a partial quotation from a statute, to which no response is required.  To the extent a response is required, denied.

22.     When considering individual officer liability under the TCPA, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. See, e.g. *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they "had direct, personal participation in or personally authorized the conduct found to have violated the statute."); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If and individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").  Mr. Akram personally participated in the actions complained of by utilizing the dialing equipment used to send the telemarketing calls, and by personally authorizing the conduct and by the fact that he is charged with its compliance with state and federal telemarketing laws.

**RESPONSE:** The allegations in the first sentence of Paragraph 22 contain legal conclusions and two quotations from court decisions, to which no response is required.  To the extent a response is required, denied.  The allegations in the second sentence of Paragraph 22 contain legal conclusions, to which no response is required.  Allstate is without sufficient information to admit or deny the remaining allegations in Paragraph 22.  To the extent a response is required, denied.

### Factual Allegations

23.     Allstate Insurance Company provides various insurance services to its customers.

8

**RESPONSE:** Allstate admits that it offers for sale, subject to the satisfaction of certain conditions precedent and underwriting criteria, insurance services and products to the public. Except as specifically admitted, the allegations set forth in Paragraph 23 are denied.

24.     To generate business through sales, Allstate Insurance Company relies on telemarketing.

**RESPONSE:** The term "telemarketing" as used in Paragraph 24 is ambiguous and undefined, and therefore subject to multiple meanings.  Without more, Allstate is without knowledge or information sufficient to form a belief as to the truth of Paragraph 24.  Allstate denies the allegations in Paragraph 24.

25.     Allstate Insurance Company also relies on a network of nationwide agents that sell its insurance services.

**RESPONSE:** Allstate admits it utilizes a network of nationwide agents that sell Allstate's insurance products.  Allstate denies the remaining allegations of Paragraph 25.

26.     One of Allstate Insurance Company's strategies for telemarketing involves the use of an automatic telephone dialing system ("ATDS") to solicit business by third parties.

**RESPONSE:** Allstate denies the allegations in Paragraph 26.

27.     Allstate Insurance Company engages this use of this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone.

**RESPONSE:** Allstate denies the allegations in Paragraph 27.

28.     Through this method, Allstate Insurance Company shifts the burden of wasted time to the consumers it calls with unsolicited messages.

**RESPONSE:** Allstate denies the allegations in Paragraph 28.

Calls to Mr. Boger

29.    Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

**RESPONSE:** Admitted.

30.    Mr. Boger's telephone number, (703) 328-XXXX, is assigned to a cellular telephone service.

**RESPONSE:** Allstate is without sufficient information to admit or deny the allegations in Paragraph 30. To the extent a response is required, denied.

31.    Mr. Boger placed his cellular telephone number, (703) 328-XXXX, on the National Do Not Call Registry more than five years ago.

**RESPONSE:** Allstate is without sufficient information to admit or deny the allegations in Paragraph 31. To the extent a response is required, denied.

32.    Despite taking the affirmative step of registering his telephone number on the National Do Not Call Registry, Prime Leads placed a telemarketing call to him on June 19, 2018.

**RESPONSE:** Allstate is without sufficient information to admit or deny the allegations in Paragraph 32. To the extent a response is required, denied.

33.    When the call was answered, there was a lengthy pause and a click before anyone came on the line, which indicated to the Plaintiff that the call was made using an ATDS.

**RESPONSE:** Allstate is without sufficient information to admit or deny the allegations in Paragraph 33. To the extent a response is required, denied.

34.    When the Plaintiff finally connected with a live individual on each call, he was solicited for an insurance quote.

**RESPONSE:**  Allstate is without sufficient information to admit or deny the allegations in Paragraph 34.  To the extent a response is required, denied.

35.      In fact, the individual identified themselves as "Zack from Allstate".

**RESPONSE:**  Allstate is without sufficient information to admit or deny the allegations in Paragraph 35.  To the extent a response is required, denied.

36.      To confirm the identity of Allstate and the services being offered, Mr. Boger listened to the telemarketing pitch and was eventually connected to "Dimitri" an employee of the Joseph Giguere Insurance Agency, Inc., an exclusive Allstate agent.

**RESPONSE:**  Allstate is without sufficient information to admit or deny the allegations in Paragraph 36.  To the extent a response is required, denied.

37.      After confirming the identity of the individuals involved in the telemarketing, Mr. Boger contacted Allstate and Prime Leads and was informed that he would be placed on the Allstate Internal Do Not Call List.

**RESPONSE:**  Allstate admits that it informed Mr. Boger that he would be placed on the Allstate Do Not Call list on or around June 20, 2018.  Allstate is without sufficient information to admit or deny the remaining allegations in Paragraph 37.  To the extent a response is required, denied.

38.      In fact, Mr. Boger received an e-mail from Ms. Gayle Burton at Allstate on June 21, 2018 that confirmed that Mr. Boger was placed on the Allstate Do Not Call list.

**RESPONSE:**  Admitted.

39.      Unfortunately, the calls did not stop.

 **RESPONSE:**  Allstate is without sufficient information to admit or deny the allegations in Paragraph 39.  To the extent a response is required, denied.

40.     On October 23, 2018, the Plaintiff received another call from "Zack from Allstate."

**RESPONSE:**  Allstate is without sufficient information to admit or deny the allegations in Paragraph 40.  To the extent a response is required, denied.

41.     When the call was answered, there was a lengthy pause and a click before anyone came on the line, which indicated to the Plaintiff that the call was made using an ATDS.

**RESPONSE:**  Allstate is without sufficient information to admit or deny the allegations in Paragraph 41.  To the extent a response is required, denied.

42.     To confirm the identity of Allstate and the services being offered, Mr. Boger listened to the telemarketing pitch and was eventually connected to "Peter Heller" an employee of the Giguere Agency, an exclusive Allstate agent.

**RESPONSE:**  Allstate is without sufficient information to admit or deny the allegations in Paragraph 42.  To the extent a response is required, denied.

43.     Mr. Boger was solicited for Allstate insurance services and again advised Allstate of the contact.

**RESPONSE:**  Allstate admits that Plaintiff contacted Allstate on November 1, 2018 regarding a purported call.  Allstate is without sufficient information to admit or deny the remaining allegations in Paragraph 43.  To the extent a response is required to the remaining allegations in Paragraph 43, denied.

44.     However, Mr. Boger has still received telemarketing calls from Prime Leads for Allstate.

**RESPONSE:**  Allstate is without sufficient information to admit or deny the allegations in Paragraph 44.  To the extent a response is required, denied.

45.     On November 1, 2018, the Plaintiff received a call from "Henry from Allstate". Henry believed Mr. Boger lived at an address that is not, and has never been, associated with the Plaintiff. Mr. Boger was transferred to "James from Allstate Insurance".

**RESPONSE:**  Allstate is without sufficient information to admit or deny the allegations in Paragraph 45.  To the extent a response is required, denied.

46.     To confirm the identity of Allstate and the services being offered, Mr. Boger listened to the telemarketing pitch and was eventually connected to "Julia Kines" an employee of the Joseph Giguere Insurance Agency, Inc., an exclusive Allstate agent.

**RESPONSE:**  Allstate is without sufficient information to admit or deny the allegations in Paragraph 46.  To the extent a response is required, denied.

47.     Mr. Boger was solicited for Allstate insurance services and again advised Allstate of the contact.

**RESPONSE:**  Allstate admits that Plaintiff contacted Allstate on October 23, 2019 regarding a purported call.  Allstate is without sufficient information to admit or deny the remaining allegations in Paragraph 47.  To the extent a response is required to the remaining allegations in Paragraph 47, denied.

48.     The telemarketing calls made by the Giguere Agency to Boger were initiated by Prime Leads and Akram acting on behalf of the Giguere Agency and Allstate.

**RESPONSE:**  Allstate denies the allegations in Paragraph 48.

49.     On February 8, 2019, the Plaintiff received another call from "Zack from Allstate".

**RESPONSE:**  Allstate is without sufficient information to admit or deny the allegations in Paragraph 49.  To the extent a response is required, denied.

50.     When the call was answered, there was a lengthy pause and a click before anyone came on the line, which indicated to the Plaintiff that the call was made using an ATDS.

**RESPONSE:** Allstate is without sufficient information to admit or deny the allegations in Paragraph 50. To the extent a response is required, denied.

51.     To confirm the identity of the services being offered, Mr. Boger listened to the telemarketing pitch and was eventually connected to "Ann Devine-Hague" an employee of the Daniel Devine Allstate office, an exclusive Allstate agent.

**RESPONSE:**  Allstate is without sufficient information to admit or deny the allegations in Paragraph 51. To the extent a response is required, denied.

52.     Mr. Boger was solicited for Allstate insurance services and again advised Allstate of the contact.

**RESPONSE:** Allstate admits that Plaintiff contacted Allstate on October 23, 2019 regarding a purported call.  Allstate is without sufficient information to admit or deny the remaining allegations in Paragraph 52. To the extent a response is required to the remaining allegations in Paragraph 52, denied.

53.     This telemarketing call was also made by Prime Leads and Akram acting on behalf of the Devine Group and Allstate.

**RESPONSE:** Allstate denies the allegations in Paragraph 53.

54.     The calls were not necessitated by an emergency.

**RESPONSE:** Allstate is without sufficient information to admit or deny the allegations in Paragraph 54. To the extent a response is required, denied.

55.     Plaintiff's privacy has been violated by the above-described telemarketing robocalls from, or on behalf of, Defendants. The calls were an annoying, harassing nuisance.

**RESPONSE:**  Allstate denies the allegations in Paragraph 55.

56.      Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls. The calls occupied his cellular telephone lines, rendering them unavailable for legitimate communication.

**RESPONSE:**  Allstate denies the allegations in Paragraph 56.

### Allstate Insurance Company's Liability

57.      For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

**RESPONSE:**  The allegations in Paragraph 57 contain legal conclusions and a partial quotation from a FCC opinion to which no response is required.  To the extent a response is required, denied.

58.      On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

**RESPONSE:**  The allegations in Paragraph 58 contain legal conclusions and a partial quotation from a FCC ruling to which no response is required.  To the extent a response is required, denied.

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 flj 1) (2013) ("May 2013 FCC Ruling").

59.     In that ruling, the FCC instructed that sellers such as Allstate Insurance Company

may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing
> activities to unsupervised third parties would leave consumers in many cases In re
> Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling
> Concerning the TCPA Rules, 28 FCC Rcd 6574, 6574 flj 1) (2013) ("May 2013
> FCC Ruling"). without an effective remedy for telemarketing intrusions. This
> would particularly be so if the telemarketers were judgment proof, unidentifiable,
> or located outside the United States, as is often the case. Even where third-party
> telemarketers are identifiable, solvent, and amenable to judgment limiting liability
> to the telemarketer that physically places the call would make enforcement in many
> cases substantially more expensive and less efficient, since consumers (or law
> enforcement agencies) would be required to sue each marketer separately in order
> to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands
> of 'independent' marketers, suing one or a few of them is unlikely to make a
> substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

**RESPONSE:** The allegations in Paragraph 59 contain legal conclusions and a partial

quotation from a FCC ruling to which no response is required.  To the extent a response is required,

denied.

60.     The May 2013 FCC Ruling held that, even absent evidence of a formal contractual

relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the

telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

**RESPONSE:** The allegations in Paragraph 60 contain legal conclusions and a partial

quotation from a FCC ruling to which no response is required.  To the extent a response is required,

denied.

61.     The May 2013 FCC Ruling further clarifies the circumstances under which a

telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the
> outside sales entity access to information and systems that normally would be
> within the seller's exclusive control, including: access to detailed information
> regarding the nature and pricing of the seller's products and services or to the

seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

FCC Rcd at 6592 46).

**RESPONSE:** The allegations in Paragraph 61 contain legal conclusions and a partial quotation from a FCC ruling to which no response is required. To the extent a response is required, denied.

62.     Allstate is liable to Mr. Boger for the calls made to him by Prime Leads after Mr. Boger explicitly informed Allstate that Prime Leads was making telemarketing calls for Allstate agents in violation of the TCPA, yet Prime Leads continued to make calls for Allstate agents, including to Mr. Boger, for a number of months after he informed Allstate.

**RESPONSE:** Allstate denies the allegations in Paragraph 62.

63.     By having their exclusive agents engage Prime Leads to make calls on behalf of its agents to generate new business, Allstate Insurance Company "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

**RESPONSE:** Allstate denies the allegations in Paragraph 63.

64.     Moreover, Allstate Insurance Company and their exclusive agents maintained interim control over Prime Leads' actions.

**RESPONSE:** Allstate denies the allegations in Paragraph 64.

17

65.     For example, Allstate Insurance Company had absolute control over whether, and under what circumstances, it would accept a customer.

**RESPONSE:**  Allstate denies the allegations in Paragraph 65.

66.     Furthermore, Allstate Insurance Company had day-to-day control over Prime Leads's actions, including the ability to prohibit it from using an ATDS to contact potential customers of Allstate Insurance Company. Allstate Insurance Company failed to make such an instruction to Prime Leads, despite the fact that Mr. Boger explicitly informed them of Prime Leads conduct, and as a result, is liable for Prime Leads' actions.

**RESPONSE:**  Allstate denies the allegations in Paragraph 66.

67.     All of the Allstate insurance agents involved in the telemarketing at issue use "@allstate.com" e-mail addresses and are listed on Allstate's website.

**RESPONSE:** The term "telemarketing" as used in Paragraph 67 is ambiguous and undefined, and therefore subject to multiple meanings.  The phrase "at issue" as used in Paragraph 67 is ambiguous and undefined, and therefore subject to multiple meanings.  Without more, Allstate is without knowledge or information to form a belief as to the truth of the allegations in Paragraph 67 and, on that basis, denies the allegations in Paragraph 67.

68.     Prime Leads transferred customer information directly to Allstate Insurance Company. Thus, the company that Allstate Insurance Company hired has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling. As such, the company that Allstate Insurance Company hired is an apparent agent of Allstate Insurance Company.

**RESPONSE:**  Allstate denies the allegations in Paragraph 68.

69.     Allstate Insurance Company had also previously been sued for the actions of third party telemarketers it hired, and as such was on notice that third parties, such as Prime Leads, were violating the TCPA on Allstate Insurance Company's behalf.

**RESPONSE:** Allstate admits that it has been a defendant in other TCPA litigation. Allstate denies the remaining allegations in Paragraph 69.

70.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id*. at 6592-593 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*. at 6593 (¶ 46).

**RESPONSE:** The allegations in Paragraph 70 contain legal conclusions and a partial quotation from a FCC ruling to which no response is required.  To the extent a response is required, denied.

## Class Action Allegations

71.     As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

**RESPONSE:**  Allstate denies that Plaintiff may bring this case as a class action and denies the remaining allegations in Paragraph 71.

72.     The classes of persons Plaintiff proposes to represent are tentatively defined as:

CLASS 1

All persons within the United States to whom: (a) Prime Leads and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) promoting Allstate products or services; (c) to their cellular telephone number; (d)

using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

### MARLYAND TCPA SUBCLASS

All Maryland Residents to whom: (a) Prime Leads and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) promoting Allstate products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

Excluded from the class are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

**RESPONSE:** Allstate denies that the classes defined in Paragraph 72 are identifiable or ascertainable or certifiable and otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and denies the remaining allegations in Paragraph 72.

73. The class as defined above is identifiable through phone records and phone number databases.

**RESPONSE:** Allstate denies that the classes defined in Paragraph 73 are identifiable or ascertainable and denies the allegations in Paragraph 73.

74. The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

**RESPONSE:** Allstate denies the allegations in Paragraph 74.

75. Plaintiff is a member of the proposed class.

**RESPONSE:** Allstate denies the allegations in Paragraph 75.

76.     There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

       a.     Whether Defendants violated the TCPA by using automated telemarketing to call cellular telephones;

       b.     Whether Defendants placed calls using an automatic telephone dialing

       c.     system;

       d.     Whether Allstate Insurance Company is vicariously liable for the conduct of Prime Leads;

       e.     Whether Defendants placed calls without obtaining the recipients' prior consent for the call;

       f.     Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

**RESPONSE:** Allstate denies the allegations in Paragraph 76 and each of its subparts.

77.     Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by the defendants and are based on the same legal and remedial theories.

**RESPONSE:** Allstate denies the allegations in Paragraph 77.

78.     Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

**RESPONSE:** Allstate denies the allegations in Paragraph 78.

79.     Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

**RESPONSE:** Allstate denies the allegations in Paragraph 79.

80.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

**RESPONSE:** Allstate denies the allegations in Paragraph 80.

81.     The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**RESPONSE:** Paragraph 81 contains legal conclusions to which no response is required. To the extent a response is required, Allstate denies the allegations in Paragraph 81 and each subparagraph therein, denies that Plaintiff is entitled to bring this action on behalf of any such class, and denies that Plaintiff meets any of the requirements of Federal Rule of Civil Procedure 23.

82.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**RESPONSE:** Allstate is without sufficient information to admit or deny the allegations in Paragraph 82.  To the extent a response is required, denied.

**Causes of Action**

**Count One:**
**Violation of the TCPA's Automated Calling provisions**

83.     Plaintiff Boger incorporates the allegations from all previous paragraphs as if fully set forth herein.

**RESPONSE:** The allegation in Paragraph 83 is a statement to which no response is required.  To the extent a response is required, Allstate incorporates herein its responses to all previous paragraphs as if set forth herein.  To the extent a further response is required, denied.

84.     The foregoing acts and omissions of the Defendants constitute violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

**RESPONSE:** Allstate denies the allegations in Paragraph 84.

85.     As a result of the Defendants violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B). The Court may award up to $1,500 if the violation was found to be "knowing or willful". *Id.*

**RESPONSE:** Allstate denies the allegations in Paragraph 85.

86.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

**RESPONSE:** Allstate denies the allegations in Paragraph 86.

**Count Two:**
**Violation of the Maryland Telephone Consumer Protection Act**

87.     Plaintiff Boger incorporates the allegations from all previous paragraphs as if fully set forth herein.

**RESPONSE:** The allegation in Paragraph 87 is a statement to which no response is required.  To the extent a response is required, Allstate incorporates herein its responses to all previous paragraphs as if set forth herein.  To the extent a further response is required, denied.

88.     The foregoing acts and omissions of the Defendants constitute violations of the Maryland Telephone Consumer Protection Act, Md. Code Ann. Com. Law §§ 14-3201, et seq, which prohibits a person from violating the TCPA. Here, as alleged above, the Defendants violated to the TCPA by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

**RESPONSE:**  Allstate denies the allegations in Paragraph 88.

89.     As a result of the Defendants violations of the Maryland TCPA, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to Md. Code Ann. Com. Law § 14- 3202(b)(2)(i) as well as their attorneys fees pursuant to Md. Code Ann. Com. Law § 14- 3202(b)(1).

**RESPONSE:**  Allstate denies the allegations in Paragraph 89.

**Relief Sought**

For himself and all class members, Plaintiff requests the following relief:

A.     Certification of the proposed Class;

B.     Appointment of Plaintiff as representative of the Class;

C.     Appointment of the undersigned counsel as counsel for the Class;

D.      A declaration that Defendants' actions complained of herein violate the TCPA;

E.      An order enjoining Defendants from making automated or pre-recorded calls;

F.      An award to Plaintiff and the Class of damages, as allowed by law;

G.      Attorney's Fees as allowed by the Maryland Telephone Consumer Protection Act;

H.      Leave to amend this Complaint to conform to the evidence presented at trial; and

I.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

**RESPONSE:** Allstate denies that Plaintiff is entitled to any of the relief he seeks in the "Relief Sought" clause and all of its subparts.

## <u>ADDITIONAL DEFENSES</u>

Allstate asserts the following affirmative defenses and/or additional defenses, which apply to claims brought by Plaintiff individually and/or to claims brought on behalf of putative class members.  Allstate reserves the right to amend this Answer and to add additional defenses as it becomes aware of additional information or as additional defenses become available.

1.      The Complaint fails to state a claim upon which relief may be granted.

2.      The claims in the Complaint cannot be certified as a class action as they fail to meet the elements of Rule 23 of the Federal Rules of Civil Procedure.  Further, a class may not be certified under Rule 23(b)(1) or (b)(2) when money damages are sought, as they are here.

3.      Plaintiff and the putative class members have not suffered any cognizable injury, and lack standing on that basis to prosecute the claims alleged in the Complaint.  Plaintiff also lacks standing to seek injunctive relief individually or on behalf of a putative class.  Upon information and belief, Plaintiff also lacks standing for purposes of class certification to assert the claims alleged herein.

4.      Plaintiff and/or members of the putative class consented to receiving the telephone calls alleged in the Complaint.

5.      Allstate has no liability for the acts or omissions of other Defendants or entities included in the allegations in the Complaint but not named as Defendants.

6.      Any purported damages suffered by Plaintiff or putative class members were caused in whole or in part by the legally and factually independent actions or omissions of third parties for which Allstate has no responsibility and/or as to which there was no actual, implied, or apparent authority.

7.      If the Court finds that Allstate violated the TCPA in any way (which Allstate denies), any such violation was not willful or knowing.   Accordingly, Plaintiff's claim for additional damages should be denied.

8.      Upon information and belief, the claims of Plaintiff and/or members of the putative class are barred in whole or in part by the doctrines of waiver, estoppel, release, laches, unclean hands, and ratification and/or other equitable limitations.

9.      The damages sought represent an excessive ratio between penalties and compensation for actual harm because the alleged damages bear no relation to any actual monetary or tangible damages suffered by Plaintiff and/or the members of the putative class.  The statutory damages scheme set forth in the TCPA, when pursued as a class action, fails to account for the degree of reprehensibility of the defendant's conduct, promotes an unconstitutionally excessive penalty, disregards considerations of causation and fault, violates substantive and procedural due process, and is barred by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

10.     By conduct, representations, and omissions, Plaintiff and the putative class have

waived, relinquished, and/or abandoned any claim for relief against Allstate respecting the matters that are the subject of the Complaint.

11.     By conduct, representations, and omissions, upon which Allstate relied to its detriment, Plaintiff if equitably estopped from asserting any claim for relief against Allstate.

12.     Plaintiff's claims are barred by the doctrine of good faith.

13.     Plaintiff's claims are barred, in whole or in part, by the TCPA's "Safe Harbor" provision or other "Safe Harbor" defenses.

14.     Plaintiff has failed to join necessary and indispensable parties in this action.

15.     Allstate currently has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses available.  Allstate reserves its right to assert additional affirmative defenses available.  Allstate reserves its right to assert additional affirmative defenses in the event that discovery indicates it would be appropriate.

16.     Plaintiff's TCPA claim and his Maryland TCPA claim arise from identical allegations and cannot be asserted simultaneously.

## **PRAYER FOR RELIEF**

Wherefore, Allstate prays for judgment as follows:

1.  That Plaintiff take nothing by way of his Complaint;

2.  That judgment be entered in favor of Allstate;

3.  For attorneys' fees or costs of suit incurred herein; and

4.  For such other and further relief as the Court deems just and proper.

Dated:  April 23, 2020

Respectfully submitted,

*/s/* Lewis S. Wiener
Lewis S. Wiener (#10845)
EVERSHEDS SUTHERLAND (US) LLP
700 Sixth Street, NW, Suite 700
Washington, DC 20001-3980
Telephone: 202-383-0140
Facsimile: 202-637-3593
Email: lewiswiener@eversheds-sutherland.com

Francis X. Nolan (*pro hac vice*)
EVERSHEDS SUTHERLAND (US) LLP
1114 Avenue of the Americas, 40th Floor
New York, NY 10036-7703
Telephone: 212-389-5083
Facsimile: 212-389-5099
Email: franknolan@eversheds-sutherland.com

*Counsel for Defendant Allstate Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 23, 2020, I electronically filed the foregoing ANSWER OF

DEFENDANT ALLSTATE INSURANCE COMPANY via the Court's CM/ECF system, which

will electronically serve all parties and counsel of record, and was sent via first class mail to parties

not represented by counsel as follows:

Via ECF

**Edward A Broderick**
Broderick Law PC
99 High St. Ste. 304
Boston, MA 02110
Tel: (617) 738-7080
Fax: (617) 830-0237
Email: ted@broderick-law.com

*Counsel for Plaintiffs*

**Matthew McCue**
Law Office of Matthew McCue
1 South Ave.
Natick, MA 01760
Tel: (508) 655-1415
Fax: (617) 830-0327
Email: mmccue@massattorneys.net

*Counsel for Plaintiffs*

**Stephen Howard Ring**
Stephen H. Ring PC
9901 Belward Campus Drive
Suite 175
Rockville, MD 20850
Telephone: (301) 5639249
Fax: (301)563-9639
Email: shr@ringlaw.us

*Counsel for Plaintiffs*

Via First Class Mail

**Mohammed Akram**, *as registered agent for*
**Prime Leads Network, LLC**
1804 Newcastle Road
Windsor Mill (Baltimore), MD 21244

**The Devine Group**
2205 Silverside Road
Wilmington, DE 19810
PRO SE

**Joseph Giguere Insurance Agency, Inc.**
15140 Athey Loop
Woodbridge, VA 22193
PRO SE

/s/ Lewis S. Wiener
Lewis S. Wiener